UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Shawn M. Manning, | No. 21-cv-160 (JRT/KMM) |
| Peititoner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Steve Kallis, *Warden*, | |
| Respondent. | |

---

This matter is before the Court on Shawn Manning's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. [ECF No. 1]. Mr. Manning claims that the U.S. Bureau of Prisons (BOP) is unlawfully calculating his sentence, because it refuses to apply "earned time credit" to which he is entitled under the First Step Act, thereby prolonging his prison sentence. For the reasons that follow, the Court recommends that Mr. Manning's petition be denied.

**I.     Background**

Mr. Manning is serving a 63-month sentence at the Federal Medical Center in Rochester ("FMC-Rochester") following his 2018 conviction in the Southern District of Iowa for a marijuana offense. [ECF No. 1 at 1; ECF No. 12-1 at 2]. He is projected to be sent to home confinement on September 9, 2021, and he has a projected release date of March 9, 2022 after application of credits for good conduct time. [ECF No. 12 at ¶ 4].

**The First Step Act**

The First Step Act was enacted on December 21, 2018. It requires the Attorney General to develop a "risk and needs assessment system" aimed at reducing recidivism,

1

including offering "evidence-based recidivism reduction programs or productive activities" to prisoners. 18 U.S.C. § 3632(a). Essentially, these programs and activities are education courses and work assignments that help prisoners develop skills to foster successful reintegration into the community after their prison term ends. The Attorney General had until July 19, 2019 to publish the assessment system. *Id.* (providing for public release of the system within 210 days after enactment). By that date, the BOP was required to determine the risk of recidivism for each inmate and figure out what evidence-based recidivism reduction ("EBBR") programming is best for each inmate. *Id.* §§ 3632(a)(1), (a)(3).

The system must "provide incentives and rewards for prisoners to participate in and complete [EBBR] programs," the available incentives include increased phone privileges, additional visitation time, transfer to prisons closer to prisoners' residence upon release, and, for prisoners who complete EBBR programs, "time credits." *Id.*, §§ 3632(d)(1), (d)(2), (d)(4). An eligible prisoner completing EBBR programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation" in those endeavors. *Id.*, § 3632(d)(4)(A)(i). These time credits have the potential to shorten the custodial period of an inmate's sentence. The BOP released the risk and needs assessment system, which it refers to as PATTERN,[1] by the statutory deadline.

The First Step Act next establishes January 15, 2020 as the deadline for the BOP to implement and complete the initial PATTERN assessment for each prisoner. 18 U.S.C. § 3621(h)(1). Once the assessments are complete, the Act provides for a two-year "phase-in"

---

[1] PATTERN is an acronym for "Prisoner Assessment Tool Targeting Estimated Risk and Needs."

period in which the BOP was required to "provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner." *Id.*, § 3621(h)(2)(A).

> Thus, under the Act's two-year phase-in period, the BOP was given [until] no later than January 15, 2022 to provide evidence-based recidivism reduction programs and productive activities to all prisoners. Still, the Act contemplates that the BOP will begin offering these programs to prisoners sooner than that. During the phase-in period, for example, the Act requires that priority for such programs and activities shall be accorded based on a prisoner's proximity to release date.
>
> [T]he Act also authorizes a preliminary expansion of evidence-based recidivism reduction programs and authority to use incentives" as part of the risk and needs assessment system. As part of expanding existing programs, Congress vested the BOP with discretion to begin offering the First Step Act's incentives—including time credits—during the phase-in period. The Act states that "[b]eginning on the date of enactment," the BOP "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D.

*Depoister v. Birkholz*, No. 21-CV-684 (ECT/BRT), 2021 WL 3492295, at *2 (D. Minn. Aug. 9, 2021) (internal citations and quotation marks omitted). The incentives and rewards in subchapter D include earned time credits for participation in EBRR. *Id.*

### The BOP's Assessment of Mr. Manning

The BOP determined that Mr. Manning is eligible to receive First Step Act earned time credits. [ECF No. 12 at ¶ 5]. The BOP also found that his PATTERN score placed him in the "medium" risk category for recidivism. [ECF No. 12 at ¶ 6]. According to the PATTERN assessment, Mr. Manning has needs in the following areas: (1) Anger/Hostility, (2) Family/Parenting, (3) Finance/Poverty, (4) Medical, (5) Substance Abuse, (6) Trauma, and (7) Work. [ECF No. 12 at ¶ 7].

In October 2020, Mr. Manning sent a request to the FMC-Rochester Warden, Steve Kallis. He explained that he had completed EBRR programs or activities as contemplated by the First Step Act, and should have had earned time credits applied to his sentence. [ECF No. 1-2 at 1]. Warden Kallis denied the request, explaining that because the BOP had not yet provided "guidance on how or when the [EBRR] programs that you have completed will be implemented towards your release date …, at this time, the institution is not allowed to award you time off your sentence."[2] [ECF No. 1-2 at 2].

According to the BOP, as of May 17, 2021, Mr. Manning was participating in the ACT Work Keys program. This program was designed to address his needs in the "Work" area, and once he completes it, "he will be eligible to earn up [to] 50 hours of EBRR program credits." [ECF No. 12 at ¶ 8]. However, Mr. Manning had not completed the program at that time so he "had not earned any time credits." [ECF No. 12 at ¶ 8]. The BOP's records show that Mr. Manning has participated in several other "education courses" during his incarceration. Between August of 2018 and March of 2020, Mr. Manning completed the following courses: (1) Keyboard 4, (2) Money Basic, (3) ASQ Quality Assurance, (4) Re-entry Readiness #6, (5) Drawing, (6) Leisure Acrylic Painting, (7) Blue Print Reading, (8) Beginning Spanish, (9) Unicor OSHA 10 – 24 Weeks, (10) USP Parenting Program, (11) CRC Career Resource, (12) Ceramics, (13) Psych Group Cognitive Skills, and (14) Strategic Fatherhood Rel. Serv. [ECF No. 12-4 at 1; *see also* ECF No. 1-1 at 1–3].

---

[2]   Mr. Manning appealed this issue unsuccessfully to the BOP's North Central Regional Office and filed an appeal with the BOP's Central Office on January 14, 2021. [ECF No. 1-2 at 3–5].

Mr. Manning has worked in Correctional Maintenance Services and participated in several vocational training programs between August of 2018 and January of 2021. [ECF No. 1-1 at 6].

## II.    Discussion

Mr. Manning claims that he is entitled to earned time credits under the First Step Act, the BOP's calculation of his sentence is flawed because those credits have not been applied to his sentence, and the failure to apply them means his release date will be unlawfully delayed. After careful review, the Court concludes that Mr. Manning's habeas petition should be denied because he is not in custody in violation of the Constitution or laws of the United States.

### A.    Legal Standard

Federal district courts may issue a writ of habeas corpus where a person is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). The BOP's computation of a prisoner's sentence may be reviewed under § 2241 to determine whether it complies with the law. *See United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (recognizing the availability of judicial review through a habeas petition for the BOP's calculation of a prison sentence). "Habeas corpus relief is not limited to immediate release from illegal custody, but the writ is available to obtain future releases, like shortening the length of actual confinement." *Wolf v. Fikes*, No. 20-CV-2339 (JRT/HB), 2021 WL 3476769, at *2 (D. Minn. Apr. 5, 2021), *report and recommendation adopted*, No. CV 20-2339 (JRT/HB), 2021 WL 3206848 (D. Minn. July 29, 2021).

Mr. Manning's claims hinge upon the proper interpretation of the First Step Act. Statutory interpretation questions begin with the plain language of the statute. *See United States v. Behrens*, 644 F.3d 754 (8th Cir. 2011). "If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Id.* (internal quotation marks omitted). In evaluating the meaning of a statute, courts consider whether the statutory context supports the plain meaning of the text. *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 185 (2004); *Depoister*, 2021 WL 3492295, at *2 ("Individual words are not read in isolation, but in the context in which they are used and in the context of the statute as a whole.") (cleaned up).

**B.     Analysis**

Although Mr. Manning claims that he is entitled to receive earned time credits under the First Step Act for courses he has completed since December 2018, this Court finds that the Act does not require the BOP to *apply* any earned time credits to his sentence until after January 15, 2022.[3] However, before turning to the basis on which the Court concludes Mr. Manning's petition should be denied, the Court first addresses an alternative argument advanced by the BOP.

---

[3]     Because the Court reaches this conclusion, it need not address the BOP's argument that Mr. Manning's claim is not reviewable under the Administrative Procedure Act based on 18 U.S.C. §§ 3621, 3624. Nor does the Court consider the BOP's assertion that Mr. Manning has not yet earned such credits because he has not yet completed any assigned EBRR programming.

### *When Time Credits Become Available*

The BOP argues that Mr. Manning's petition fails because the BOP has reasonably "interpreted [time credits] as only being available for EBRR programming and productive activities assigned and completed after January 15, 2020." [ECF No. 11 at 24–25]. In other cases where prisoners have challenged the BOP's administration of earned time credits under the First Step Act, the BOP has advanced an identical argument. *See, e.g.*, *Salter v. Fikes*, No. 20-cv-2253 (ECT/ECW), 2021 WL 2365041 (D. Minn. May 5, 2021). The Court rejects the BOP's suggestion that earned time credits cannot be earned for courses that a prisoner completed before January 15, 2020.

In *Salter v. Fikes*, the BOP argued that under a proposed regulation, which the BOP relies on in this case as well, it reasonably interprets the First Step Act as only making earned time credits available for courses assigned and completed after January 15, 2020. *Id.* (citing 85 Fed. Reg. 75,268, 75,272 (Nov. 25, 2020) (proposed regulation 28 C.F.R. § 523.42(d)(1)). However, as the *Salter* court explained, the BOP's interpretation is contrary to the Act's plain language. 2021 WL 2365041, at *3. In relevant part, the statute provides that "[a] prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed … prior to the date of enactment of this subchapter." 18 U.S.C. § 3632(d)(4)(B). The date of enactment of the First Step Act, and the relevant subchapter referenced in § 3632(d)(4)(B), was December 21, 2018, not January 15, 2020. This Court agrees with and adopts the *Salter* court's reasoning, including its conclusion that no deference is owed to the BOP's interpretation in the proposed regulation under *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *Salter*, 2021 WL

7

2365041, at *3–5 (concluding that "'the date of enactment of this subchapter' in § 3632(d)(4)(B)(i) unambiguously means December 21, 2018").

Accordingly, the Court does not recommend denying Mr. Manning's petition on this basis and the BOP's position is not persuasive on this issue.

### The BOP's Discretion

Unfortunately for Mr. Manning, this does not mean that he is entitled to a writ of habeas corpus "directing the BOP to immediately calculate and apply all 'earned good time' under the [provisions] of the First Step Act." [ECF No. 1 at 5]. Instead, the Court finds, as has nearly every other court to address similar claims, that Mr. Manning's claim is premature because the BOP is not required to award him the earned time credits he seeks until January 15, 2022.

Mr. Manning argues that he has completed EBRR programs and activities already and is entitled to have corresponding earned time credits applied to his sentence because 18 U.S.C. § 3632(d)(4) provides that a prisoner "shall" earn 10 days of time for every 30 days of participation in such programs and activities. He also points to language in § 3621(h)(1) requiring the BOP to implement and complete initial risk and needs assessments for each prisoner by January 15, 2020, and in § 3621(h)(3) requiring the BOP to give priority in offering EBRR programming to prisoners who are closer to their release dates during the two-year phase in period established by § 3621(h)(2). Finally, he argues that § 3621(h)(4) provides further support for his position that the BOP is required to apply earned time credits now that he has completed significant EBRR programs, and he cites *Goodman v. Ortiz*,

No. 20-cv-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020), to support his interpretation of these statutory provisions.

However, none of these provisions unambiguously requires the BOP to apply any earned time credits to a prisoner's sentence calculation prior to January 15, 2022. Congress provided that the BOP "may" expand available EBRR programming and "may" offer incentives and rewards, including time credits, during period between enactment and the completion of the two-year "phase-in." 18 U.S.C. § 3621(h)(4). Courts have found that Congress's use of the term "may" in this provision conferred discretion on the BOP, especially in light of the fact that the legislature used "shall" in other portions of the First Step Act when it chose to require the BOP to take certain actions. *Depoister*, 2021 WL 3492295, at *3 (explaining that if Congress intended to require the statute to be implemented immediately, it would have used the term "shall" instead of "may" in § 3621(h)(4)).

Moreover, the overwhelming majority of courts to have addressed this issue have respectfully disagreed with the statutory analysis reflected in *Goodman*. As the court recently explained in *Depoister*:

> Nor does the Act's contemplation that the risk and needs assessment be "phased in," like one court has found, necessarily mean that time credits will be applied during the phase-in period. *See Goodman v. Ortiz*, No. 1:20-CV-7582, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020). "While it is true that the statute requires a phase-in, ... the statute requires various activities during the phase-in period, but pointedly does not require the BOP to [begin] to assign [time credits] during the phase-in period." *Cohen* [*v. United States*], No. 20-cv-10833 (JGK), 2021 WL 1549917, at *3 [(S.D.N.Y. Apr. 20, 2021)]; *see Diaz v. Warden*, 9:21-CV-738 (GTS/ATB), 2021 WL 3032694, at *2–3 (N.D.N.Y. July 19, 2021) (same).

*Depoister*, 2021 WL 3492295, at *3. Once the phase-in period is complete, "implementation is mandatory, the BOP discretion extinguishes, and an eligible prisoner 'shall' then earn time

9

credits for successful participation in evidence-based recidivism reduction programming or productive activities." *Id.* (citing 18 U.S.C. § 3632(d)(4)).

Given the plain meaning of the relevant provisions of the First Step Act, Mr. Manning has not shown that the BOP's computation of his sentence is contrary to the statute. Congress did not require the BOP to offer the time credits before January 2022 and the BOP has chosen, in its discretion, not to apply earned time credits during the phase-in period. As a result, by his participation in various training courses and work assignments between December 21, 2018 and the present, Mr. Manning simply cannot benefit right now from the time-credit incentives created by the First Step Act. With a period of home confinement approaching and a March 2022 release date, the unavailability of these time credits is no doubt frustrating to Mr. Manning. If, in fact, he completed all of the courses as indicated in his habeas petition and they satisfy the criteria for EBRR programs and productive activities, had Congress required the BOP to apply the credits sooner, or if the BOP had chosen, on its own to do so, Mr. Manning may have been able to start his home confinement sooner and obtained an earlier release date. But because he has not shown that he is in custody in violation of the Constitution or laws of the United States, the Court cannot grant him the relief he seeks. 28 U.S.C. § 2241(c)(3). Accordingly, his habeas petition should be denied.

## Recommendation

Based on the foregoing, the Court recommends that the habeas petition [ECF No. 1] be **DENIED**.

Date: September 9, 2021

*s/ Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.